Case number 18-5387, USA v. Charles Eason. Oral argument, 15 minutes per side. Mr. Ritz for the appellant. Good morning. Good morning. May it please the court, Kevin Ritz for the United States. This case, like so many others, requires this court to interpret and apply a definitional provision in a criminal sentencing enhancement. The good news is that the statutory text in this case is very broad and provides a clear road map to the right answer. The question is whether the promotion of the manufacture of methamphetamine involves the manufacture of methamphetamine. It does, and the district court got this wrong. This court should reverse. The court should, of course, start with the statutory text, and the key word that everybody agrees upon here is involving. That is about as expansive and broad of a word as you will see in these sentencing enhancements. The case law uniformly has interpreted that word in a very broad and expansive manner. The test that we have set forth as to what that means is that the conviction should relate to or connect with the manufacture of a controlled substance here, methamphetamine. Mr. Eason suggests this court should add the word closely. We think that's unnecessary to give effect to what Congress meant here. Either way, we should win, and either we would win under even the relate closely test. The conviction was for purchasing, acquiring, or delivering an item that can be used to produce methamphetamine, not the actual drug itself. The ACCA says a controlled substance. You could have an item used to produce methamphetamine that's not a controlled substance. Absolutely, Your Honor. You could have water, for instance. Water? I don't think that's reflected in the case law, but Coleman fuel, ammonia, lithium strips. Soda fed. I'm sorry? Soda fed's the one that everybody's buying. Exactly. Grocery stores. And I think that gets to what was going on when the legislature in this state and many other states passed these laws about 15 years ago. The methamphetamine manufacturer is a little different from other drugs. It can be done by anyone in this room purchasing legally purchasable ingredients. And what the legislatures were trying to do is to target the first step of that manufacturing process, which is amassing these ingredients. And the promotion or initiation, which is also a crime in the state of Tennessee, and certainly the manufacturer itself, qualifies as involving manufacturer. How does supplying a product to – I mean, as I think in terms of when you make a product, you're using ingredients to make the product. Typically, whoever makes the ingredient isn't viewed as manufacturing the product. They're actually manufacturing the ingredient or supplying the ingredient. How do you say that merely supplying the ingredient is part of manufacturing? We don't say that, Your Honor. And the Tennessee statute requires selling, purchasing, acquiring, or delivering an ingredient. But then it goes on, right? Okay, so delivering an ingredient is enough under the statute to get it for a conviction. It's the act that is enough. But then there's the extra mens rea element that it has to be done with intent. I guess my question is under the ACCA it says it has to be manufacturing of a controlled. So you're saying involving manufacturing. So to deliver the ingredient would be enough to involve the individual in the manufacturing of the controlled substance. As long as you're delivering that ingredient with the intent or with a reckless disregard. And it's really crucial, Your Honor, that involving is the word, and it's not is manufacturer distribution. This court has a large docket of crime of violence, violent felony cases, where it has to decide whether something is burglary or has as an element the use of force. This is much broader. Involving is much broader. And the key, obviously, argument that Mr. Eason is setting forth and where the district court, in our view, got tripped up, is on this reckless disregard language in the statute. That's pretty much what we've got to decide on, isn't it? Precisely. Reckless disregard. Precisely, yes. It's the least amount of evidence that you'd have to have. Correct. So we take Mr. Eason's hypothetical that someone could be prosecuted under this statute for purchasing an ingredient with reckless disregard that it's about to be used to cook meth. That's enough. And a few things here. First, there is no mens rea listed in this ACCA definition. And the cases have pointed that out. Second, Mr. Eason has actually shown no Tennessee cases whatsoever. We've cited several, and the cases don't really differentiate between whether the defendant in those cases was doing it with intent or with reckless disregard. But I guess third and most importantly, recklessness is a robust standard. Recklessness means you are aware of but consciously disregarding a substantial and unjustifiable risk that something's going to happen, that a meth cook is going to occur. And that means you know something is going to happen or might happen or there's a good chance it's going to happen, and yet you do this action anyway. That's a robust standard. This court, the Supreme Court, has engaged in a lot of litigation as to whether recklessness is enough in the crime of violence situation. So whether it has reckless assault causing bodily injury has as an element the use of force. Well, this court has actually said yes. But if that's a close call, this is an easy call because, again, all it has to do is involve the manufacturer. So reckless causing bodily injury, reckless assault causing bodily injury certainly involves an assault and certainly involves a bodily injury. Where are you getting your definition of reckless disregard? From the Tennessee Code, Your Honor, and I believe it's 3917. Sorry, I don't have it in front of me. 3911302, Your Honor, is the Tennessee statutory code that defines recklessness. In our view, Mr. Eason has pointed to the legislative history in our view that supports our view as well. This is the debate over expanding the statute was really over how to expand it and how far to expand it. And during the course of that history, assuming you even get there, which we don't think you need to because of the text, there was concern expressed about drugs and violent crime going hand in hand. There was actually reference back in 1986 to methamphetamine laboratories and how much of a problem that was becoming. Mr. Eason is not someone who's outside the scope of what we think about when we think about armed career criminals. He had 38 criminal convictions on his record. These were the only five that were potentials for the ACCA enhancement, but he actually had two other drug felonies, felony evading arrest, which in the old days would have qualified under the residual clause. And then when he was in this instant case, when he was prosecuted, it was because he possessed a loaded firearm and had actually a small amount of drugs on him. Mr. Ritz, am I correct that Judge Lippman got hung up not on whether or not reckless disregard or intent works,  so she thought that we had, that the government had to establish that there was intent to engage in a serious drug offense? I think that that's a little different than the question you pose. She said, I think there has got to be sufficient intent. Reckless disregard can't show intent. Right. I'm not sure. I think we're saying the same thing in that there does not need to. Then one goes next to involving. How does involving fit with that? Correct. And it didn't seem that Judge Lippman went to that next step about involving being a broad encompassing feature. We certainly don't think that Judge Lippman interpreted involving in a broad enough fashion. And the reason is because she seemed to think that there was still an intent requirement subsumed. Exactly. Am I correct that that, to me, seemed that if there is a disconnect, and we don't yet know, but if there were a disconnect here, it seems to be in her worry about defining intent to commit a serious drug offense. Correct. And then the fact that she was actually asking that question at all. And then involving. At all. And Mr. Eason has a little bit different take on the district court's ruling. This is a de novo question. It's a legal question, of course. And so the question is, does this conviction fit or not? And in our view, it does for the reasons, the textual reasons I've stated. The case law, which I've referred to, but the case law is really overwhelming in our favor. There aren't a lot of, I shall say, circuit level cases that have addressed these methamphetamine promotion type convictions. But all of these other convictions that these court cases have looked at offers to sell. There's actually the Gibbs case that Mr. Eason cites is possessing. Can I go back to Judge Lippman? Certainly, Judge. As I read in her colloquy at sentencing, she's not sure how the definition of recklessness fits into the categorical, the modified categorical approach. Would you follow that then? Follow that through for us? Let me try, Your Honor. And I think there may have been some concern about that or, I guess, confusion. In our view, I think that we agree, Mr. Eason and the government agree, that the categorical approach applies. Under the modified categorical approach, he was convicted under this subsection 1. So we all agree as to what the Tennessee statutory language at issue is. And I think the district court was there too. I think everybody was on the same page on that point. And then the question is, really, does every violation of that statute, not necessarily Mr. Eason's in particular. That's the whole categorical approach. Does every violation qualify? And that's where, in our view, going off on the analysis point about whether intent is required and whether reckless disregard suffices was, in our view, erroneous. You don't really even have to ask that question. Even if you do, reckless disregard does qualify, again, because there's no mens rea requirement and because recklessness is a robust standard. The cases, again, are in our favor. Legislative history is in our favor. We've made a comparison as well to the federal statute, which is very similar to this Tennessee statute. In our view, it wouldn't make sense for the federal statute, which would qualify as an ACCA predicate if there was an intent to facilitate the manufacture of methamphetamine. For that to qualify with this state and state convictions like it, frankly, for it not to qualify, that would be inconsistent. Does the federal statute use this reckless disregard term? Your Honor, it does not. It has something about reasonable cause, but the only way the federal statute violation would qualify is if there was an intent to manufacture or facilitate the manufacture of methamphetamine. That would jump it up into the 10 years or more situation. I have my time for rebuttal. Thank you. Mr. O? Good morning. My name is Peter O. I'm with the Federal Defender's Office in Memphis, and I represent Mr. Charles Eason. The key word in this case is involving. And I think that we disagree with the government about its scope. The First Circuit in McKinney made the astute observation that in construing involving, that we cannot read it too narrowly, nor can we read it too broadly. It is, in some ways, a measured term. True, in the criminal context, it seems to be broad, but I think we know from civil cases that there are far broader terms that are available, relating to, arising out of, or even in any way involving. Those are the types of terms that truly give, for example, contractual terms their broadest scope. Involving is a term that is somewhere in the middle. Why do you say that? What case or grounds would you say that? That it doesn't naturally, it's not naturally an expansive term. It is an expansive term, Your Honor, but it's not as expansive as other terms such as relating to or arising out of. Yeah, I'm saying some authority for taking that position. Well, September of 2018, United States Franklin, the Ninth Circuit, came out with a case. The citation is 904 F3rd 793. And in that case, the Ninth Circuit makes the same observation that we make in our opening brief, that relating to is naturally a broader term than involving. And we also see it from our civil cases that I think we cite in our footnote that relating to can be construed extremely broadly to encompass even connections that have tangential connections. I think McKinney, the First Circuit, I think has got it right. It can't be read too broadly. It can't be read too narrowly. It is in some ways an expansive and at the same time a measured term. It's a term then that gives rise to this line drawing inquiry that we focus on in our brief. The First Circuit talks about it. Where exactly does? Well, the Sixth Circuit hasn't drawn that tricky little line between those two words. I mean, come on. So if there is some between, how can we, as a matter of law, the Sixth Circuit hasn't spoken. So this will be our chance, right? Yes. The arguments about reckless disregard are pretty hard to overcome, aren't they, as relating to involving? If I could address the court. First, I think the government makes the argument that if this statute were applied in the federal context, that it would naturally and automatically be deemed a serious drug offense under the Armed Career Criminal Act. We substantially disagree on that point. And I think that the government has largely conceded that issue, although I'm sure the government may have a rebuttal to it. Here's how 843A6 applies. That's the federal statute that's analogous. So if you have a material and you either know or intend or have reasonable cause to believe that it will be used to manufacture controlled substances, then that's a violation of 843A6. Under subsection D, however, it's very clear that the only way that a violation of that statute can rise to the level of a serious drug offense, triggering the Armed Career Criminal Act, is if you actually demonstrate specific intent to manufacture or facilitate manufacture of methamphetamine. So our argument from the start has been this. When you're talking about assistance where you are purchasing an ingredient that can be used to produce methamphetamine with reckless disregard of its intended use, mens rea actually is one significant component that the court can consider in determining either the closeness of that conduct to the actual manufacturing or the remoteness of it. And Congress seems to recognize that. Honeycutt v. United States is the case that construed 843A6. It determined that if all you're able to establish is reasonable cause to believe that an ingredient will be used to produce manufacturing, in that case, the district court explicitly gave an instruction for deliberate indifference, which is very similar to reckless disregard. The maximum penalty is four years imprisonment. Under no circumstance can that type of conviction qualify as a serious drug offense under the federal statute. Even with one or more prior drug convictions under 843A6, the maximum penalty is eight years. It's only if a jury finds beyond a reasonable doubt that that individual had the specific intent to manufacture or facilitate the manufacture of methamphetamine that under the federal statute you get a serious drug offense sufficient to then later on say, you have a gun, you have three of those, you're going to serve at least 15 years imprisonment. So I think even Congress recognizes that when we're talking about someone who goes somewhere and purchases an ingredient, and he may give that ingredient to someone else, that person's proximity, whether he's actually involved with that manufacturing that happens down the line, mens rea can be critical if all you have is reckless disregard. Reckless disregard is a term that's used quite a bit in statutes, right? It is, Your Honor. And it qualifies you for being a felon, right? Yes, Your Honor. Yes, it does. They say, go in here and buy us 10 boxes of Sudafed, and he knows that they've had a history of manufacturing methamphetamine. He goes in, buys it, brings it out, gets money for it. That's a violation, right? It is a violation, and it does result in that criminal conviction in state court. But whether or not that involved manufacturing so as to later – But it clearly does. You can't manufacture without the ingredients, right? It is true, Your Honor, but when we talk about that individual's connection to the manufacturing, their proximity to it or their remoteness to it, their level of intent is important in assessing exactly how close they are to that manufacturing. I think Congress in 843-86 recognizes that that's part of the analysis. I think the district court, Judge Lindman, also recognized that as well. She did talk about this idea of intent versus reckless disregard, but her ultimate holding was that the offense – and let's be clear about that as well. Under the categorical approach, modified categorical approach, and then under Mathis, the least culpable conduct here is that there was the purchase of an ingredient that can be used to produce methamphetamine with reckless disregard of its intended use. It clearly encompasses a situation where an individual purchases an ingredient. Someone else has the intent to manufacture, and you recklessly disregard that other person's intent. Under those circumstances, the district court correctly reasoned that intent versus recklessness can be one part of the factor that the court can consider in assessing that individual's proximity or remoteness to the manufacturing itself. What we see from the transcript, though, of sentencing is that the district court was somewhat flummoxed and said, I'm picking this side, but some court is going to have to straighten this out. I do recognize that. It wasn't a real strong position that we took there. It was not the slam-dunk definitive holding that we would have preferred. It was a handoff, would I call it. Handoff to this court, perhaps. I would disagree with that characterization, but I understand the court's concern about the district court's ruling. I do believe at its core, however, the judge made, the district court made the correct holding and made the correct analysis that it really is about proximity or remoteness, and that was the basis for her ruling, and that was eminently correct. If I may also go back to the issue of involving, the government made the argument that the case law is overwhelmingly in its favor. Not so. So here are the cases that we have before us as we try to understand this landscape of involving. Let me ask you a quick question about the text of 924E2. When it says, with intent to manufacture or distribute, do you agree that that only modifies the word possessing? That's correct, Your Honor. Okay. When we look at the landscape of the cases, obviously if you've been convicted of manufacturing methamphetamine or distributing cocaine, you're going to fall under the category of involving manufacturing and distributing. One step removed from that, we have really the bevy of cases. Thomas from the Sixth Circuit, King from the Second, McKinney from the First. They deal with conspiracy or attempt. McKinney made the astute observation that those naturally involve manufacturing or distributing as using common usage, because at the heart of a conspiracy or attempt... It's probably better if you use the mic. Yes, Your Honor. Counsel, please. Yes. At the heart of that person's conspiracy or attempt is the manufacturing or distribution. A step beyond that, we have Bynum in the Eighth Circuit and Vickers in the Fifth. And there, the courts were confronted with the issue of how, whether or not offers to sell involve manufacturing. I think what's really important there to recognize is that even with an offer to sell, the courts noted the strain on the plain language and they had to resort to the ACCA legislative history. And that's where both Bynum and Vickers said, look, the ACCA was intended to target drug traffickers. Drug traffickers who intentionally enter the highly dangerous drug distribution world. If you offer to sell, you've intentionally entered that world, you've intentionally made an offer to sell cocaine. Under the legislative history and the purpose of the ACCA is where you still qualify as an armed criminal. Beyond that, I think, is where we lie. We're sort of in the gray area. Beyond that is where we first have Ernst. It is a district court opinion, but I think it is an excellent opinion. It first notes that there is this other line of cases, both coming out of all these circuits. But the circumstances there were more remote than those other cases. That's a situation where the statute provided that you could be held criminally liable if you delivered controlled substances. But the reality is that the district court held that that statute, you could be convicted under that statute if you attempted to arrange a transaction between two other individuals. The district court said, look, this is much different. This goes beyond what Bynum and Vickers held in the Fifth Circuit about offers to sell. We're at a realm now where your connection to the actual distribution or the actual manufacturing is sufficiently remote so that you are no longer could be deemed an armed criminal. It does not sufficiently involve the distribution so as to qualify. We're really only looking at the convictions, not... Okay, so the convictions, all five are... I mean, the court doesn't need to go back and examine the... They aren't convicting again. Okay, the district court here just realizes that the court convicted, the Tennessee courts convicted your client for these, under these statutes in Tennessee. It sounds like you think the court is permitted to go behind those convictions. Not at all, Your Honor. All right. I think we're relying on the plain language and the over-breath and the breath of the Tennessee statute 39-17-433-A1. And the extent of that statute is that Mr. Eason could have been convicted for no more than the purchase of any ingredient that can be used to produce methamphetamine. It has to be reckless. Yes, Your Honor. It's not just buying. It has to be reckless. Yes, Your Honor. Which means he has to know what's going on, basically. Right, but I think in that circumstances, I mean, our argument is that it's still sufficiently remote from the actual manufacturing to resist... So you would quarrel with recklessness being an appropriate standard? No, I would not quarrel with recklessness being the appropriate standard, but I'm saying that even with that standard and even had he been convicted in that standard, that demonstrates a sufficient remoteness from the actual manufacturing to resist the definition of a serious drug offense under the ACCA. Okay, but he was convicted under that? Absolutely. Okay. All right. I think there are just a couple other issues that bear mention here. I think my time is rapidly declining. In their opening brief, the government makes a long discussion about, or I should say a discussion about the purpose under the methamphetamine statute that was passed. When we look at cases like Brandon and Malkern out of the Fourth and First Circuits, they're very clear. It doesn't matter how a statute is described or labeled by a legislature. What matters is what was he convicted of. When we take all these things into account, our position is that the statute under which Mr. Easton was convicted and the over-breath of that statute allows the determination that this was not an armed criminal serious drug offense. The legislative history, we believe, is in our favor as well, and even if the legislative history were uncertain, the rule of lenity applies, particularly here where we're talking about a sentencing enhancement and where, in our estimation of the legislature, the Congress has not spoken plainly and unmistakably. Okay. Now your time has expired, Mr. O, so we appreciate your argument. Thank you. Thank you. Some rebuttal, I think. Briefly, Your Honor, two main points. First, Mr. O, with regard to the case law, Mr. O mentioned Brandon and Malkern. When we say the cases are in our favor, we mean that the cases have almost uniformly found that particular convictions qualify under this serious drug offense definition. Those two found that the convictions at issue did not, and the reason is because those were both possession-only cases, or at least those statutes allowed for the potential that someone could have been convicted under the state statute simply for possession. But that's not what we're arguing. We would not be arguing that possession itself would qualify because that's not involving manufacturing, distribution, or possession with intent. Mr. Eason, though, through his briefing and the litigation here, has really given away quite a bit in terms of what does qualify. As he said, conspiracy to manufacture methamphetamine would qualify. Attempt to manufacture methamphetamine would qualify. Buying these ingredients with intent to manufacture methamphetamine, he said, would qualify. So the question is really, does this statute, which allows for the recklessness, mens rea, fall closer to all of those things and to manufacturing itself than to the simple possession-type cases? The answer is yes. The answer is, as Judge Seiler put it, you can't manufacture without the ingredients. What's going on is that Tennessee is trying to criminalize the amassing of ingredients for a methamphetamine cook. That's what Mr. Eason did five times, and because of that, the ACCA enhancement should have applied. Rule of lenity. Inapplicable? He argues for it. It is inapplicable. The rule of lenity is basically, if we get to the rule of lenity, we lose, I guess. In our view, the statutory text and the history and the structure of the statute provide the right answer here. Involving, again, about as broad of a term as you'll see. If recklessness is enough and has, as an element, the use of force, or is even debatably enough in that case, it's certainly, you know, promoting the manufacture of methamphetamine involves the manufacture of methamphetamine. We ask this Court to reverse. We have your argument, and both sides, we appreciate that very much, and the Court will study your matter and issue an opinion in due course. Thank you.